**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JULIA M. CATLETT,

    Petitioner,

v.

CASE NO. 05-CV-72890-DT
HONORABLE GERALD E. ROSEN
UNITED STATES DISTRICT JUDGE

CLARICE STOVALL,

    Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Julia M. Catlett, ("petitioner"), presently confined at the Scott Correctional Facility in Plymouth, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, petitioner challenges her conviction for second-degree murder, M.C.L.A. 750.317; felon in possession of a firearm, M.C.L.A. 750.224F; felony-firearm, M.C.L.A. 750.227b; and being an habitual offender, M.C.L.A. 769.10. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. Petitioner has provided a detailed statement of facts in her petition for writ of habeas corpus. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Because the facts of this case are undisputed, only a brief overview of the facts

1

is required.

Petitioner was convicted of shooting and killing her live-in boyfriend, Tracy Codgell, in their apartment in Pontiac, Michigan on July 4, 2001.  A number of the victim's friends and relatives testified that he had been living with petitioner and her two children for one and a half to two years at the time of the shooting.  These witnesses testified that petitioner was jealous, would constantly telephone the victim, and had assaulted the victim several times.  None of these witnesses ever noticed any marks or bruises on petitioner.  These witnesses testified that the victim was the non-aggressor in the confrontations between himself and petitioner.  However, these witnesses acknowledged that the victim was in the habit of carrying a concealed firearm and kept a loaded shotgun at home.

On July 4, 2001, the victim attended a family picnic at a Pontiac park with petitioner's daughter, but not petitioner.  Charles Williams testified that he dropped the victim off at home after the picnic, but planned on returning to pick the victim up to take him to a Flint nightspot.  Williams called the victim from home, but got no answer.  However, shortly thereafter, petitioner called Williams, informing him that she was not at home, but inquiring about the victim's whereabouts.  Williams then went to the victim's apartment and found the victim in the back bedroom, dead from a gunshot wound.  Williams called the police.  Neither petitioner nor her children were at home at the time.  While Williams talked to the police in the apartment, the telephone rang several times.  Williams noticed that the Caller ID had the same phone number that petitioner had called him from earlier.

The medical examiner testified that the victim died from a single shotgun wound

2

to the chest. There was evidence of close range firing. Another worker at the medical examiner's office recovered a loaded handgun from the victim's back pants pocket.

Petitioner and several of her witnesses testified that she had been assaulted verbally and physically on numerous occasions in the past by the victim. Petitioner testified that on the night of the shooting, the victim hit and choked her. When her son tried to intervene, he was hit as well. When her son called "911", petitioner told him to hang up. When "911" called back, petitioner told them everything was okay. The victim, however, continued assaulting petitioner and eventually said, "Either kill me or be willing to die" and reached for the handgun that he always carried. Being afraid for her life, petitioner grabbed the nearby shotgun, pointed it at the victim, and it discharged.

Petitioner's daughter testified that on the night of the shooting, the victim had his "little gun" and petitioner went and got the "big gun" and shot the victim. Petitioner's son testified in a similar manner, although he then acknowledged that he wasn't in the room when the shot was fired, nor did he see a gun in the victim's hand. An expert on domestic violence testified about the characteristics of Battered Person Syndrome and of her interview with petitioner regarding this syndrome.

Detective Hernani Cristobal testified that he checked the law enforcement data base and discovered a domestic violence complaint from February 3, 2000, in which petitioner was the victim and the victim was the aggressor. Shelly Riley testified regarding a prior telephone conversation that she had with petitioner in April of 2001, in which she overheard the victim's voice, fighting and blows, and petitioner crying and screaming. Riley also testified that when she saw petitioner the following day, three braids of hair were ripped from petitioner's scalp. Patricia Steed recalled an incident

3

from September of 1999, where she accompanied petitioner to the porch of her house where she was living at the time. Steed testified that the victim snatched open the door and grabbed petitioner's arm to pull her in the house.

The prosecution called several rebuttal witnesses to impeach petitioner and her children.

Petitioner's conviction was affirmed on appeal. *People v. Catlett,* No. 242787 (Mich.Ct.App. December 23, 2003); *lv. den.* 471 Mich. 865; 683 N.W. 2d 672 (2004). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY EXCLUSION OF RELEVANT EVIDENCE IN SUPPORT OF PETITIONER'S DEFENSE CONTRARY TO FEDERAL EVIDENCE RULES OF EVIDENCE THEREBY DENYING THE PETITIONER'S DUE PROCESS RIGHT UNDER THE V AND XIV AMENDMENTS TO THE UNITED STATES CONSTITUTION AND CONST. 1963 ART 1, § 17.
>
> II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GIVE THE INSTRUCTION ON THE COGNATE LESSER INCLUDED OFFENSE OF INTENTIONALLY AIMING A WEAPON DEATH RESULTING THEREBY DENYING PETITIONER THE RIGHT TO DUE PROCESS PURSUANT TO THE UNITED STATES CONSTITUTION AMENDMENTS V AND XIV; AND CONST. 1963 ART 1, § 17.
>
> III. PETITIONER'S VI AND XIV AMENDMENT RIGHTS WERE VIOLATED WHEN THE TRIAL COURT'S IMPROPER LIMITATION OF IT'S PRIOR INCONSISTENT STATEMENT INSTRUCTION TO THE PETITIONER ALONE DENIED PETITIONER THE RIGHT TO A FAIR TRIAL.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or

4

> involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. Petitioner was not deprived of her right to present a meaningful defense.**

Petitioner claims that she was deprived of a fair trial when the trial court excluded certain testimony that she wished to introduce in support of her self-defense claim. Petitioner sought to introduce evidence that the victim had physically and verbally abused her during their relationship. The trial court precluded Detective Cristobal from testifying about the contents of the earlier police report of domestic violence, testimony from Shelly Riley regarding statements made by petitioner during their telephone conversation from April of 2001, as well as testimony that petitioner had

5

told her daughter and another witness that she was scared of the victim.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, she also has the right to present her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* Therefore, although the right to present a defense is fundamental, it is not absolute. Thus, the right must yield to other constitutional rights or to other legitimate demands of the criminal justice system. *See Coy v. Renico,* 414 F. Supp. 2d 744, 774 (E.D. Mich. 2006)(internal citations omitted).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or

6

incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

In the present case, petitioner and her two children were permitted to testify about the victim's prior threats and assaultive behavior toward her. There was testimony from the victim's own friends and relatives that he was known to carry a gun. An employee from the medical examiner's office testified that a handgun was recovered from the victim's back pocket at the time of his autopsy. An expert witness testified concerning Battered Person's Syndrome. Detective Cristobal testified that there had been a prior police report made concerning an assault, in which the victim was the aggressor and petitioner was the victim. Riley was able to testify that she had overheard the altercation in April of 2001 between the victim and petitioner. Steed was able to testify that the victim grabbed petitioner and dragged her into their house. Because the evidence that was admitted gave petitioner a sufficient foundation to establish that she shot the victim in self-defense because she feared for her life, based upon the victim's prior assaultive behavior, the exclusion of the additional, cumulative evidence to bolster her self-defense claim did not deprive petitioner of a fair trial. *See Davis v. Burt,* 100 Fed. Appx. 340, 350 (6th Cir. 2004); *See also McCullough v. Stegall,* 17 Fed. Appx. 292, 295 (6th Cir. 2001)(exclusion of testimony regarding threats that victim may have made to petitioner's family did not violate defendant's fundamental right to present a defense, in murder prosecution in which defendant asserted he had acted in self-defense, where petitioner was able to testify as to whether he had been

personally threatened or whether he had other personal knowledge of threats); *Calmese v. Bowersox,* 2 Fed. Appx. 669, 670 (8th Cir. 2001)(exclusion of evidence concerning victim's prior violent acts toward defendant's nephew, which was offered to bolster similar evidence, did not deny murder defendant a fair trial). Petitioner is not entitled to habeas relief on her first claim.

**B. Claims # 2 and # 3. The jury instruction claims.**

The Court will consider petitioner's two instructional error claims together for the purpose of judicial economy.

In her second claim, petitioner contends that the trial court failed to instruct the jury on the lesser included offense of intentionally aiming a weapon resulting in death. In her third claim, petitioner contends that the trial court failed to instruct the jury that prior inconsistent statements made by her children could only be used to impeach their credibility and not as substantive evidence of petitioner's guilt, even though the judge had given a similar cautionary instruction to the jury regarding the proper usage of petitioner's prior inconsistent statements. [1]

In order for habeas relief to be warranted on the basis of incorrect jury instructions given in a criminal trial in state court, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See*

---

[1] Respondent contends that petitioner's second and third claims are procedurally defaulted. It is unclear whether petitioner's third claim was defaulted, because the Michigan Court of Appeals did not clearly and expressly indicate that they were denying petitioner's claim because of counsel's failure to request a limiting instruction. Because petitioner's second and third claims are without merit, the Court does not need to resolve the procedural default issue, but will address the merits of the claims instead. *See Coy v. Renico,* 414 F. Supp. 2d at 764, n. 5.

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Jones v. Smith,* 244 F. Supp. 2d 801, 816 (E.D. Mich. 2003). When the issue before the habeas court is the omission of an instruction, a habeas petitioner's burden is especially heavy. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 604 (E.D. Mich. 2001).

The United States Supreme Court has declined to determine whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003)(*citing to Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). Thus, a state trial court's failure to give the jury an instruction on a lesser included offense in a non-capital case is not contrary to, or an unreasonable application of, clearly established federal law as required for federal habeas relief. *Id. Beck* has been interpreted by the Sixth Circuit to mean that "the [federal] Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F. 3d 531, 541 (6th Cir. 2001). Thus, the failure of a state trial court to instruct a jury on a lesser included offense in a non-capital case is not an error cognizable in federal habeas review. *Bagby v. Sowders*, 894 F. 2d 792, 797 (6th Cir. 1990); *See also Scott v. Elo,* 302 F. 3d 598, 606 (6th Cir. 2002). Petitioner is not entitled to habeas relief on her second claim.

Regarding her third claim, petitioner contends that the trial court failed to instruct the jury that the prior inconsistent statements of her children could only be considered by the jury for impeachment purposes and not as substantive evidence of petitioner's guilt, even though a similar limiting instruction had been given regarding the proper use of petitioner's prior inconsistent statements.

The use of a witness' prior inconsistent statement as substantive evidence, and

9

not merely for impeachment purposes, is not an error of constitutional dimension. *See Isaac v. United States,* 431 F. 2d 11, 15 (9th Cir. 1970). Therefore, any jury instruction that would permit the jury to use to a witness' prior inconsistent statement as substantive evidence and not solely for impeachment is not a constitutional error which would require reversal of a criminal conviction. *Id.* Moreover, because there was no indication that the trial court or the prosecutor ever suggested to the jury that they could use the children's prior inconsistent statements as substantive evidence, petitioner was not prejudiced by the trial court's failure to give a limiting instruction. *Cf. Fenske v. Thalacker,* 60 F. 3d 478, 482 (8th Cir. 1995)(petitioner was not prejudiced by counsel's failure to object to lack of limiting instruction when prior unsworn statement of witness was admitted for impeachment, where jury probably used it to impeach the witness's credibility and not for improper purpose). Accordingly, petitioner is not entitled to habeas relief on her third claim.

### III.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).  Therefore, a district court has the power to deny a certificate of appealability *sua sponte. See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because she has failed to make a substantial showing of the denial of a federal constitutional right. *Millender,* 187 F. Supp. 2d at 880.  The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.

                s/Gerald E. Rosen  
                Gerald E. Rosen  
                United States District Judge

Dated:  October 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2006, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager